## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JOHN RODGERS BURNLEY,     )
     )
     Plaintiff,     )
     )
v.     )     Civil Action No. 3:10CV264-HEH
     )
BRYAN T. NORWOOD, *et al.*,     )
     )
     Defendants.     )

### MEMORANDUM OPINION
### (Granting Defendants' Motions to Dismiss)

This is a civil rights action brought against the City of Richmond, multiple police officers from the City of Richmond Police Department, and several citizens of the City of Richmond by *pro se* Plaintiff John Rodgers Burnley alleging a myriad of violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The case is currently before the Court on Defendants' multiple Motions to Dismiss.

The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process. For the reasons discussed herein, the Court finds that the Plaintiff has failed to plead any actionable claims and therefore grants Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.    BACKGROUND

On April 26, 2010, *pro se* plaintiff John Rodgers Burnley ("Burnley") filed a Complaint *in forma pauperis* containing seventeen claims, alleging violations of 42

U.S.C. § 1983, 42 U.S.C. § 1985(3), and the Civil Rights Act of 1991, 42 U.S.C. §

1981a.[1]  The Complaint, which is rambling and at times hard to follow, names fifteen

defendants, including the City of Richmond ("City"), the City of Richmond Police

Department ("RPD"), six individual RPD officers ("Individual RPD Defendants"), and

seven private citizens who are neighbors of the Plaintiff ("Neighborhood Defendants"), as

well as unknown named RPD officers.  The City, the RPD, and the Individual RPD

Defendants are referred to collectively as the "City Defendants."

The Individual RPD Defendants are as follows: Colonel Bryan T. Norwood

("Norwood"), John Venuti ("Venuti"), Howard J. Hicks ("Hicks"), William C. Meadows

("Meadows"), Amira Sleem ("Sleem"), Benjamin Toderico ("Toderico"), and unknown

named RPD officers.[2]  The Neighborhood Defendants are Walter Edward Baker

("Baker"), Joan E. Jones ("Jones"), William P. Wilson ("Mr. Wilson"), Jean J. Wilson

("Ms. Wilson"), Hazel Miles ("Miles"), Tyrone M. Miller ("Mr. Miller"), and Michel G.

Miller ("Ms. Miller").

In Claim One,[3] Plaintiff alleges that the Neighborhood Defendants conspired with

the City Defendants to have Plaintiff removed from the neighborhood because he paid for

---

[1]Burnley has filed over fifty civil rights suits since 1981, resulting in this Court subjecting
him to a pre-filing review system (which has expired). *See In re Burnley*, 988 F.2d 1, 2 (4th Cir.
1992) (per curiam).

[2]As explained below, the Amended Complaint also names Andrew Carr as an Individual
RPD Defendant.

[3]The Court adopts Plaintiff's labeling of the counts in his Complaint as "claims."

his home with $80,000 cash. Plaintiff contends that the conspiracy began in 1999 when the Neighborhood Defendants met with a Richmond City Council member.

Claim Two alleges that Neighborhood Defendant Jones continually harasses Plaintiff and reports him to the RPD. Plaintiff repeats these allegations in Claim Three, specifically stating that on December 26, 2009, two police cars responded to a call from Jones, crossed Plaintiff's property line, and blocked his back yard for a period of thirty minutes. Claim Four alleges that on August 27, 2009, Jones videotaped Plaintiff's home, called the RPD, and asked a plainclothes policeman who drove a green Jeep with a yellow bicycle on a rack to arrest Plaintiff.

Claim Five alleges that the Neighborhood Defendants met with Individual RPD Defendant Venuti in early 2009 and that they came to an agreement to have Burnley arrested. According to the Complaint, Venuti maintained 24-hour surveillance of Plaintiff's home and gave the Neighborhood Defendants telephone numbers of RPD officers to report Burnley. Neighborhood Defendant Jones allegedly continued to harass Burnley, claiming that Venuti told her that he might not have probable cause to search and arrest Plaintiff but that he knew how to apply pressure.

Claim Six states that, in addition to Neighborhood Defendant Jones continuing to harass him, an old Verizon truck driven by a plainclothes police officer twice obstructed Plaintiff while he was driving in March 2009. A police officer also allegedly sat in front of Plaintiff's home in a red Ford pick-up truck, attempted to look inside, and then

3

followed Plaintiff's car. Claim Six also alleges that Individual RPD Defendant Norwood, the Chief of Police, has knowledge of such RPD officer misconduct and has done nothing to correct it.

Claim Seven states that Neighborhood Defendants Mr. and Ms. Miller called the RPD numerous times in 2009 to report that Plaintiff possessed drugs and that plainclothes officers responded to the Millers' home, where they spoke loudly about Burnley. Claim Eight states that Neighborhood Defendants Baker and Jones conspired on April 13, 2009 to report Plaintiff. Also, Baker allegedly called the RPD about Plaintiff many times in 2009. Similarly, Claim Nine alleges that Neighborhood Defendant Miles, who he claims called the RPD about Burnley since 1999, told Plaintiff in April 2010 that the Neighborhood Defendants continued to work with the RPD to have him arrested.

In Claim Ten, Plaintiff alleges that Neighborhood Defendant Wilson asked former Richmond Sheriff Michelle Mitchell (to whom Wilson is supposedly related) to request that the Richmond City Council and the RPD have Plaintiff arrested on drug charges.

Claim Eleven states that Neighborhood Defendant Jones continued to harass Plaintiff in 2010 and that Individual RPD Defendant Venuti was determined to arrest him before departing the RPD in February 2010. Claim Twelve alleges that Jones met with a purported police officer driving a Chevrolet van with South Carolina license plates and asked her to put Burnley away for life.

Plaintiff alleges in Claim Thirteen that Individual RPD Defendant Norwood knew

4

or should have known of his officers' unlawful acts because Plaintiff filed multiple complaints with and sent several letters to the RPD. Norwood supposedly encouraged this misconduct and did nothing to correct it. This claim also states that on April 13, 2010, a police officer driving a dark green Chevrolet Impala cut Plaintiff off while driving. The same day, another police officer supposedly stood in front of Plaintiff's home with a yellow Labrador retriever.

Claim Fourteen alleges that Plaintiff's constitutional rights were violated as a result of the failure of Individual RPD Defendants Norwood and Venuti to train and supervise RPD officers. Likewise, Claim Fifteen states that Individual RPD Defendants Meadows and Hicks of the RPD Internal Affairs Division violated Burnley's due process rights by "sweeping his complaint under the rug." The RPD allegedly had a policy to refuse to investigate its own officers.

Claim Sixteen concerns the arrest of Plaintiff's daughter Tara Burnley ("Tara") on February 20, 2009, for her failure to comply with a work program to which she was sentenced for a drug conviction. Plaintiff alleges that Individual RPD Defendants Sleem and Toderico arrested Tara at his home without an arrest or search warrant. After handcuffing Tara at the front door, Sleem and Toderico granted her request to change her clothes and shoes. While Tara changed, Sleem and Toderico allegedly entered the home against Plaintiff's wishes, frightened his family, restricted their movements, and looked through bags of clothes. Plaintiff filed a complaint about this incident with the RPD.

5

In Claim Seventeen, Plaintiff alleges that the City has a widespread and longstanding history of abusing his rights against unreasonable search and seizure.

Plaintiff filed an Amended Complaint on May 27, 2010 adding RPD detective Andrew Carr ("Carr") as a Defendant and alleging the following additional claims.[4]

Part Two of the Amended Complaint[5] claims that Individual RPD Defendant Carr was assigned to investigate Plaintiff's Complaint (presumably relating to his daughter's arrest). Individual RPD Defendant Hicks supposedly told Plaintiff in a March, 3, 2009 letter that Plaintiff would be advised of the results. Burnley states that the RPD never advised him of the results because no investigation actually occurred. Individual RPD Defendants Norwood, Venuti, Hicks, and Carr, according to Plaintiff, conspired to cover-up Plaintiff's complaint in accordance with an RPD policy and custom.

Part Three states that Individual RPD Defendants Norwood and Meadows conspired to cover-up the unconstitutional conduct of Individual RPD Defendants Sleem and Toderico—specifically, entering Plaintiff's home without probable cause after handcuffing Tara on February 20, 2009.

---

[4]The Amended Complaint appears to supplement rather than supersede Burnley's original Complaint. Because a Court is to construe a *pro se* litigant's pleadings liberally and because all of the Defendants' Answers and Motions to Dismiss respond to both as if they were one pleading, the Court will treat the Complaint and the Amended Complaint as a single consolidated Complaint.

[5]The Amended Complaint includes only numbered sections–for additional allegations, demanding a jury trial, amending the relief sought, etc. (as opposed to labels such as "counts" or "relief sought"). The Court, therefore, calls these sections "parts" here.

Part Four alleges that on several occasions in May 2010, a plainclothes RPD officer parked an old Dodge van in front Plaintiff's home and then spoke with Neighborhood Defendant Jones. On May 21, 2010, this supposed police officer, along with another plainclothes RPD officer who followed Plaintiff in a white Jeep while driving earlier that day, allegedly entered Plaintiff's yard and searched his outdoor trash cans.

Part Five repeats Plaintiff's earlier claim that the Neighborhood Defendants and the City Defendants conspired to violate his constitutional rights. Part 6 alleges that Neighborhood Defendant Jones cursed at Plaintiff and threatened to physically harm his family in retaliation for this lawsuit.

Part Seven purports to amend the relief sought from each of the Neighborhood Defendants to one million dollars ($1,000,000.00) in compensatory damages and five million dollars ($5,000,000.00) in punitive damages.

Part Eight demands a jury trial pursuant to Fed. R. Civ. P. 38.

Part Nine claims that the alleged violations of Plaintiff's constitutional rights occurred as a result of a City governmental custom, policy, ordinance, regulation, or decision. Specifically, Plaintiff claims that the City, through the Richmond City Council and Richmond Mayor Dwight C. Jones, is responsible for the RPD's policies, customs, and guidelines. Part Ten specifies that Plaintiff is suing the Individual RPD Defendants in their personal capacity and seeks to amend the relief sought from each to five million

dollars ($5,000,000.00) in compensatory damages and ten million dollars ($10,000,000.00) in punitive damages.

On June 11, 2010, the City and the RPD jointly filed a Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. Individual RPD Defendants Sleem and Toderico also together filed a Rule 12(b)(6) Motion to Dismiss the Amended Complaint on June 13, 2010, as did Individual RPD Defendant Norwood on June 14, 2010. On June 17, 2010, the Neighborhood Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) as well as 28 U.S.C. § 1915(e)(2) for frivolous and malicious *in forma pauperis* suits or alternatively under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that Plaintiff's allegations do not rise to the necessary level of presenting a substantial federal question.[6] Also on June 17, 2010, Individual RPD Defendants Carr, Hicks, Meadows, and Venuti jointly filed a Rule 12(b)(6) Motion to Dismiss the Amended Complaint.

---

[6]The Court declines to exercise its discretion to dismiss this suit on the alternative grounds requested by several Defendants in their Motion to Dismiss. The first of these is 28 U.S.C. § 1915(e)(2) for frivolous and malicious *in forma pauperis* suits. The second is Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction where a plaintiff's allegations are "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy," *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89, 118 S. Ct. 1003, 1010 (1998).

## II.   ANALYSIS

A.   Standard of Review

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states

a claim for relief must contain . . . a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Traditionally, "[a] motion to

dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; . . . it does not resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), amplified the

standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient

factual information to "state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 570, 127 S. Ct. at 1974. While it does not require "detailed factual allegations,"

*Twombly* held that Fed. R. Civ. P. 8 demands that a plaintiff provide more than mere

labels and conclusions stating that the plaintiff is entitled to relief. *Id.* at 555, 127 S. Ct.

at 1964-65. Thus, a complaint containing facts that are "merely consistent with" a

defendant's liability "stops short of the line between possibility and plausibility of

entitlement to relief." *Id.* at 557, 127 S. Ct. at 1966 (internal citation omitted). Rather, a

complaint achieves facial plausibility when it contains sufficient factual allegations

supporting the reasonable inference that the defendant is liable for the misconduct

alleged. *Id.* at 556, 127 S. Ct. at 1965; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(2009).

In *Iqbal*, the Supreme Court observed that the time-honored tenet that a reviewing court must accept all of a complaint's allegations as true does not apply to legal conclusions. Therefore, the Court must initially distinguish between factual allegations, which the Court must assume are true, and mere legal conclusions offered as factual assertions. *Iqbal*, 129 S. Ct. at 1949-50. After parsing the well-pleaded facts from legal conclusions, the Court must then determine whether the complaint's factual allegations support a "plausible claim for relief." *Id.* at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Though incorporating the *Twombly* and *Iqbal* pleading standards, the Court is mindful that a *pro se* plaintiff's complaint is to be construed liberally and held to a less stringent standard than a pleading drafted by an attorney. *Estelle v. Gamble*, 429 U.S. 97, 106 S. Ct. 285, 292 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972) (per curiam); *Islam v. Jackson*, 782 F. Supp. 1111, 1113 (E.D. Va. 1992).

B.    Section 1983 Claims Against the City

Plaintiff's Complaint alleges that the RPD participated in a conspiracy to deprive

10

Burnley of his constitutional rights in violation of 42 U.S.C. § 1983. To state a claim under § 1983 against a municipality for action by a subordinate governmental entity, such as RPD, a plaintiff must plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [his] rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see also Monell v. Dep't of Soc. Serv.*, 436 U.S.658, 690 (1978). Moreover, "[a]n official policy often refers to formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time, and must be contrasted with episodic exercises of discretion in the operational details of government." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (internal citations omitted).

Where a defendant is not an individual or a corporation, the capacity to be sued must be determined by the law of the state. Fed. R. Civ. P. 17(b)(3). "In Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued." *Muniz v. Fairfax County Police Dep't*, No. 1:05CV466 (JCC), 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005) (citing *Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), *aff'd*, 742 F.2d 1448 (4th Cir. 1984)). The RPD has not been vested with such a capacity. *Dance v. City of Richmond Police Dep't*, No. 3:09CV423 (HEH), 2009 WL 2877152, at *4 (E.D. Va. Sept. 2, 2009). The Court will therefore treat all claims against the City and the RPD

as against the City only.[7]

The Complaint alleges in multiple claims that the RPD operated under official policies or customs that deprived Plaintiff of his constitutional rights. What little factual support Plaintiff provides for these conclusory statements fails under the *Twombly* and *Iqbal* standard. Specifically, Plaintiff fails to plead sufficient facts to show that the alleged plainclothes police officers, unmarked vehicles, and Verizon telephone trucks he encountered were actually RPD officers or affiliated with the City in any way, let alone that these individuals and vehicles were operating under official policy or custom attributable to the City. Particularly in light of *Iqbal*'s instruction that courts should use "judicial experience and common sense" in 12(b)(6) rulings, it is simply implausible that the multitude of random individuals and vehicles that Burnley encountered actually involved plainclothes RPD officers acting under an official City policy or custom. *Iqbal*, 129 S. Ct. at 1950.

The same is true regarding Plaintiff's allegations that the RPD did not properly investigate his complaints against its police officers. Even viewed in the light most favorable to the plaintiff, the Complaint's factual allegations do not plausibly show that the decisions in these investigations rise above "episodic exercises of discretion in the operational details of government." *Semple*, 195 F.3d at 712. These actions thus likewise

---

[7]Furthermore, the Richmond City Sheriff's Office falls under the authority of the Commonwealth of Virginia, which is not a named defendant here, rather than the City. The Complaint's alleged Richmond City Sheriff's Office conduct, therefore, is irrelevant to this case.

do not spring from an official policy or custom on which Plaintiff's claims can be based.

Alternatively, "deficient programs of police training and supervision" or "irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct" can serve as the basis for the imposition of municipal liability under a § 1983 claim in the absence of an official policy or custom. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). The Complaint makes several conclusory statements alleging such deficient training, supervision programs, and a failure to stop or correct widespread unconstitutional conduct. However, Plaintiff does not plead sufficient underlying facts to support these bare legal assertions. Specifically, the Complaint does not plead any facts relating to RPD training or supervision programs besides, perhaps, Burnley's displeasure with the investigations of his complaints. Moreover, Burnley does not plead facts to demonstrate that these investigations were part of any broader and deficient program. The Complaint also fails plausibly to show a widespread pattern of unconstitutional conduct. Plaintiff's conjecture and speculation are simply insufficient to satisfy the pleading requirements of Rule 12(b)(6). Consequently, Plaintiff fails to sufficiently state a claim upon which relief can be granted under 42 U.S.C. § 1983 against the City.

C.    Section 1983 Claims Against Individual RPD Defendants

Plaintiff alleges multiple 42 U.S.C. § 1983 claims against the Individual RPD

13

Defendants.[8] However, "[q]ualified immunity provides [government] officials with protection 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Melgar v. Greene*, 593 F.3d 348, 357 (4th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). "Thus officers will not be held liable, even if they violate statutory or constitutional rights, unless they had prior guidance which would allow them to determine that their contemplated action was improper." *Id.* Police officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). All in all, qualified immunity is broad enough to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

Plaintiff alleges that the Individual RPD Defendants violated his constitutional rights by encouraging his neighbors to report him, monitor him, enter his home, and search bags of clothes while accompanying (and with the consent of) Tara, an arrestee

---

[8]The Complaint purports to sue the Individual RPD Defendants both in their official and personal capacities. The claims brought against these Defendants in their official capacity are treated as duplicative of the claims brought against RPD and are therefore dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3106 (1985); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). Qualified immunity, as explained here, applies to the claims against the Individual RPD Defendants in their personal capacity. *See Dance*, 2009 WL 2877152 at *5. Although qualified immunity does not extend to "an official acting beyond the scope of his authority," Plaintiff does not claim that the police acted outside their authority here. *In re Allen*, 106 F.3d 582, 592-94 (4th Cir. 1997).

under their watch. Furthermore, Burnley alleges that the RPD failed to investigate his complaints against it to his satisfaction.

None of these allegations, however, constitute a violation of a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Melgar*, 593 F.3d at 357. The facts in the Complaint are consequently inadequate to show that the Individual RPD Defendants are not entitled to qualified immunity.

Plaintiff's only arguably credible claim in this regard is that Individual RPD Defendants Sleem and Toderico subjected him to an unconstitutional search under the Fourth Amendment by rifling through bags of clothes in his house. This claim fails, however, for at least two reasons. First, the police had a duty to accompany Tara while honoring her request and may perform a protective sweep for their own safety, especially of bags of clothes here, given that the arrestee had asked to change her clothes. *See Maryland v. Buie*, 494 U.S. 325, 333, 110 S. Ct. 1093, 1097-98 (1990). It is therefore not possible to "infer more than the mere possibility of misconduct" from the alleged facts, so the Complaint fails to meet *Iqbal*'s 12(b)(6) standard. *Iqbal*, 129 S. Ct. at 1950 (2009). Second, since police officers "are not liable for bad guesses in gray areas," the Individual RPD Defendants retain qualified immunity. *Maciariello*, 973 F.2d at 298. The Court will therefore dismiss Plaintiff's § 1983 claims against the Individual RPD Defendants.

D.    <u>Section 1983 Claims Against Neighborhood Defendants</u>

Plaintiff also claims that the Neighborhood Defendants conspired amongst

themselves and with the RPD to deprive him of constitutional rights in violation of 42 U.S.C. § 1983. To state a claim for relief for such a conspiracy, the Complaint must sufficiently allege that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right . . . ." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must thus allege the deprivation of a constitutional right. *Id.*

Burnley fails sufficiently to do so here. The Plaintiff has no constitutionally protected right that prevents his neighbors calling the police, drivers cutting him off in traffic, or others parking, walking, or riding their bicycles near his home. Citizens do have rights that protect them from police misconduct (e.g., Fourth Amendment rights against unreasonable search and seizure and Fourteenth Amendment equal protection rights). Each of the individuals who allegedly confronted Burnley while walking near his house, driving, or by searching through his trash cans were, according to the Complaint, a plainclothes police officer. There is simply no plausible basis, however, for believing that such individuals were actually affiliated with the RPD. The Complaint therefore does not sufficiently show that Plaintiff's constitutional rights were violated.

For these reasons, the Complaint's facts fail to state a claim that the Neighborhood Defendants conspired to deprive Plaintiff of his constitutional rights in violation of 42 U.S.C. § 1983 and will be dismissed pursuant to Rule 12(b)(6).

E.    Section 1985(3) Claims

Plaintiff also claims that the Neighborhood Defendants conspired with the City

Defendants in violation of 42 U.S.C. § 1985(3). "The law is well settled that to establish

a sufficient cause of action for conspiracy to deny equal protection of the laws under [42

U.S.C. §] 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2)

who are motivated by a specific class-based, invidiously discriminatory animus to (3)

deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and

which results in injury to the plaintiff as (5) a consequence of an overt act committed by

the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376

(4th Cir. 1995) (internal citations omitted). Moreover, a § 1985(3) claim cannot be

predicated upon conspiracies supposedly based on economic or commercial animus.

*United Bhd. of Carpenters v. Scott*, 463 U.S 825, 838, 103 S. Ct. 3352, 3361 (1983); *C &

H Co. v. Richardson*, 78 F. App'x 894, 902 (4th Cir. 2003).

The Complaint alleges that the "conspiracies" against the Plaintiff began because

he paid for his house with $80,000 cash. Even viewing the Complaint in the light most

favorable to the Plaintiff, these allegations pose no connection to "class-based,

invidiously discriminatory animus," *Simmons*, 47 F.3d at 1376, especially because such

discrimination cannot be based on economic animus. *United Bhd. of Carpenters*, 463

U.S. at 838, 103 S. Ct. at 3361. By excluding a necessary element, the Complaint fails to

state a *prima facie* case for a violation of § 1985(3) by any Defendant. The Court will

dismiss these claims accordingly.

The Complaint's § 1985(3) claims against the City Defendants fail on other grounds as well. Plaintiff alleges that the Individual RPD Defendants engaged in a civil rights conspiracy amongst themselves. However, the Fourth Circuit has adopted the "intracorporate conspiracy doctrine," which provides that the agents of a single corporation cannot form a conspiracy within the meaning of § 1985(3). *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (citing *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)). The intracorporate conspiracy doctrine does not apply only to corporations per se; it applies to any "agency" or "business entity." *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.*, 569 F. Supp. 1344, 1352 (E.D. Va. 1983), *aff'd mem.*, 742 F.2d 1448 (4th Cir. 1984); *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972). This Court has also expressly applied this reasoning to government entities. *See, e.g., Fowler v. Dep't of Educ.*, 472 F. Supp. 121, 122 (E.D. Va. 1978).

The Fourth Circuit applies what is known as the "personal stake exception" to the intracorporate conspiracy doctrine, whereby "an exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective." *Buschi*, 775 F.2d 1240 (internal citation omitted). Such an exception is warranted where a defendant possesses "an interest in this controversy other than that which concerns his employment." *Haigh v. Matsushita Elec. Corp.*, 676 F. Supp. 1332,

1343 (E.D. Va. 1987).

Here, each of the Individual City Defendants who allegedly conspired together are agents of the City, thereby defeating Plaintiff's § 1985(3) claims against all of the City Defendants. The Complaint also does not allege that any of the Individual City Defendants had "an interest in this controversy other than that which concerns his employment." *Id.* The personal stake exception therefore does not apply, causing Plaintiff's § 1985(3) claims against the City Defendants to fail pursuant to the intracorporate conspiracy doctrine.

F. Civil Rights Act of 1991 Claims

Plaintiff attempts to make claims under the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 171 (1991) (codified at 42 U.S.C. § 1981a). This Act, however, addresses only employment discrimination. Because Plaintiff was never employed by any Defendant, all claims under the Civil Rights Act of 1991 are improper, and this Court will dismiss them accordingly.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____
Henry E. Hudson
United States District Judge

Date: Aug 4 2010
Richmond, VA

: